UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRACY FRACASSE, et al., | : | |
|     Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-670 (JCH) |
| v. | : | |
| | : | |
| PEOPLE'S UNITED BANK, | : | JUNE 17, 2013 |
|     Defendant. | : | |

**RULING RE: PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION UNDER THE FEDERAL LABOR STANDARDS ACT AND CLASS CERTIFICATION UNDER FED. RULE CIV. P. 23 (Doc. No. 39)**

**I.    INTRODUCTION**

The plaintiffs, Tracy Fracasse and K. Lee Brown, bring this action against the defendant, People's United Bank ("PUB"), alleging unlawful denial of overtime pay under both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the Connecticut Minimum Wage Act ("CMWA"), General Statutes §§ 31-58 et seq.  Plaintiffs now move the court for conditional certification under the collective action provision of the FLSA, 29 U.S.C. § 216(b), and for certification as a class under Rule 23, Fed. R. Civ. P.

For the reasons below, plaintiffs' Motion (Doc. No. 39) is **granted in part and denied in part**.

**II.    BACKGROUND**

PUB is a regional bank in the Northeast whose services include extending mortgage loans to customers.  See McNeil Aff. (Doc. No. 43-1) at ¶ 3; Fracasse Aff. (Doc. No. 41-6) at ¶ 4.  Plaintiffs were employed by PUB as permanent mortgage underwriters during the relevant periods of the proposed classes—Fracasse since

1

approximately August 2006, see Fracasse Aff. ¶ 1;[1] Brown since May 2010, see McNeil Aff. ¶ 5.  Plaintiffs' primary job responsibilities were for reviewing and processing mortgage loan applications according to industry standards and PUB's internal guidelines.  See Fracasse Aff. ¶¶ 5-6.  All PUB mortgage underwriters have the same or similar duties.  Id. at ¶ 7.[2]  While temporary mortgage underwriters received overtime compensation, PUB's policy was to classify permanent mortgage underwriters as exempt employees.  Id. at ¶¶ 9-10.  Thus, plaintiffs claim they were unlawfully denied overtime compensation for the ten to twenty hours of overtime that they and other permanent mortgage underwriters worked per week.  Id. at ¶¶ 10-11.

During the period from May 2010 to October 2012, PUB employed a total of at least thirty-one permanent mortgage underwriters in Connecticut.  See McNeil Aff. ¶ 8.[3]  All thirty-one were based out of PUB's Bridgeport facility and reside in one of three Connecticut counties.  Id. at ¶¶ 8-9.[4]  Plaintiffs seek to certify a class under the FLSA

---

[1] Fracasse's Affidavit contains two different paragraphs numbered 1.  The citation here is to the second paragraph 1.

[2] The phrasing of Fracasse's Affidavit is ambiguous as to the basis of her knowledge that the duties performed by other underwriters was the same or similar.  At oral argument, plaintiffs' counsel suggested that the ambiguous phrasing may be due to counsel's poor choice of words.  PUB does not contest that all permanent mortgage underwriters shared the same job title and operated under the same 2004 job description, although plaintiffs assert—and PUB appears to concede in part—that the description may not accurately reflect underwriters' actual duties.  At this stage the court credits Fracasse's statements absent a reason not to credit them.

[3] Plaintiffs make much of PUB's prior admission in response to Interrogatory No. 2 that thirty-five individuals were "classified as exempt mortgage underwriters . . . between May 2009 and May 2012."  By the court's reading of the interrogatory, it is at least possible that PUB accurately answered plaintiffs' question and accurately asserts now that thirty-one permanent mortgage underwriters worked out of the Bridgeport, Connecticut facility between May 2010 and October 2012.  The court acknowledges, however, that PUB's answers leave open the presence of other undisclosed class members.  While unable to give the court a precise figure at oral argument, PUB's counsel asserts that the total number remains less than forty.

[4] McNeil's Affidavit states, "PUB employed a total of 31 permanent mortgage underwriters who worked and resided in Connecticut."  Although the phrasing suggests the possibility that there may be

and Rule 23. All PUB mortgage underwriters who worked in excess of 40 hours during the workweek became eligible for overtime compensation on October 21, 2012, when PUB reclassified underwriters as non-exempt. Id. at ¶ 7.

## III.   DISCUSSION

In the Second Circuit, the legal standard for conditionally certifying FLSA collective actions is distinct from the legal standard for certifying Rule 23 class actions. See Myers v. Hertz Corp., 624 F.3d 537, 556 (2d Cir. 2010), cert. denied, 132 S. Ct. 368 (2011). While the legal standards are distinct, the Second Circuit has held that there is no inherent incompatibility between a collective action under the FLSA and a Rule 23 class for related state-law claims. See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 247-49 (2d Cir. 2011).

The court will consider separately the two proposed classes for which plaintiffs seek certification. The ability to satisfy the undemanding standard for conditional certification under the FLSA will not necessarily mean that plaintiffs can meet the "higher threshold" for certification under Rule 23. Id. at 556.

### A.   FLSA

The FLSA entitles plaintiffs to recover unpaid overtime compensation on behalf of themselves and "similarly situated" employees who consent in writing ("opt in") to be party to the collective action. 29 U.S.C. § 216(b). The statute of limitations on an individual's FLSA claims continues to run until that individual opts in as a plaintiff. 29 U.S.C. § 216(c). As described in Myers, district courts in the Second Circuit follow a two-step approach to FLSA collective actions. 624 F.3d at 555-56. In the first step,

---

other permanent underwriters who work at PUB's Connecticut offices while residing outside the state, counsel at oral argument disavowed this possibility.

plaintiffs move for conditional certification to send court-approved notice to potential opt-in plaintiffs. Id. at 555. At this stage, plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Id. (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). While "unsupported assertions" do not suffice to carry plaintiffs' burden, the first step presents "a low standard of proof because the purpose . . . is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Id. In the second step, which is typically initiated by a defendant's motion for decertification, the district court "undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated." Lynch, 491 F. Supp. 2d at 368. If members of the class are not similarly situated, the court may then dismiss opt-in plaintiffs' claims without prejudice. Id.

Conceding that the burden at the notice stage is very low, PUB contends that the single Affidavit of Fracasse is nevertheless insufficient. The court disagrees. Under the "modest factual showing" standard, courts "regularly rely on plaintiffs' affidavits and hearsay statements." Zaniewski v. PRRC Inc., 848 F. Supp. 2d 213, 220 (D. Conn. 2012) (surveying post-Myers district court opinions). The cases cited by PUB are not to the contrary. Plaintiffs here do not seek conditional certification of a class with members operating under different job titles or descriptions, see Romero v. H.B. Auto. Group, Inc., No. 11 CIV. 386 CM, 2012 WL 1514810 (S.D.N.Y. May 1, 2012), or across different offices, see Armstrong v. Weichert Realtors, No. CIV.A. 05-3120 (JAG), 2006 WL 1455781 (D.N.J. May 19, 2006). Nor does this case involve employees who work in isolation from one another and have no opportunity for personal observation of other

4

employees' schedules.  Rogers v. Ocean Cable Grp. Inc., No. CIV. 10-4198, 2011 WL 6887154 (D.N.J. Dec. 29, 2011).  It is undisputed that all putative class members share a single job title and description, even if that description is to some extent inaccurate.[5]  PUB does not suggest that supervisors placed different demands on different underwriters.  Nor are other employment circumstances alleged from which the court might infer substantial variation in employees' responsibilities.[6]  PUB itself stresses that all putative class members worked at a single facility.  See Def.'s Mem. in Opp'n to Pl.'s Mot. (Doc. No. 42) at 9-10.  PUB also admits that its policy prior to October 2012 was to classify underwriters as exempt.  Id. at 26.  Nothing in the record implies that potential opt-in plaintiffs are differently situated relative to the claim that PUB's policy unlawfully denied them overtime compensation.

While in other factual contexts a single affidavit may not suffice, the court determines that Fracasse's Affidavit satisfies the "modest" burden on plaintiffs at the notice stage.  Fracasse's knowledge that her co-workers worked similar overtime is based on her own observation.  See Fracasse Aff. ¶ 11.  Her Affidavit attests in detail to her duties, to the lack of discretion in the performance of those duties, and to her understanding that all mortgage underwriters at PUB had similar responsibilities.  Id. at ¶¶ 5-7.  The foundation of her knowledge is expressly stated.  Id. at ¶ 2.  Further, PUB provides no evidence that her understanding should not be credited.  PUB's objection to

---

[5] Notably, plaintiffs did not produce a job description for the court.  They object that the job description from 2004—which according to PUB is the only job description available—was written with a view to claiming mortgage underwriters to be exempt employees.  Neither party has suggested that the description accurately reflects underwriters' actual job duties.

[6] At oral argument, PUB's counsel contended that mortgage underwriters have some duties that are uniform and some that vary without elaborating or providing illustrations.  The court notes that actual variance in duties is more properly addressed at the second stage on defendant's decertification motion, after the court has a fuller record on which to base its determination as to whether plaintiffs are similarly situated.  See Zaniewski, 848 F. Supp. 2d at 220-21.

basing conditional certification on a single affidavit is unsupported. While PUB is not obliged to present evidence—the burden being on the plaintiffs—PUB cites no case for the proposition that the quantity of affidavits matters. Reasonable inferences support Fracasse's understanding that other underwriters had similar job duties. In the absence of any counterevidence from the defendant, Fracasse's Affidavit—when added to the undisputed facts that all putative class members worked out of a single office and under a single job title and description—is enough to warrant conditional certification of the FLSA class and the issuance of notice to potential opt-in plaintiffs.

    B. Rule 23

Plaintiffs seek certification under Rule 23 of their related state-law claims for unpaid overtime under the CMWA. To warrant certification of a Rule 23 class with respect to these claims, however, plaintiffs must satisfy a more demanding legal standard. Unlike FLSA conditional certification, Rule 23 certification is proper only if the court is satisfied that the proposed class satisfies each of the Rule 23(a) prerequisites. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011); see also In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 40 (2d Cir. 2006) ("[A] district court may not grant class certification without making a determination that all of the Rule 23 requirements are met."). Thus, plaintiffs can proceed as a Rule 23 class only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed. R. Civ. P. If the court determines that each of the Rule 23(a) requirements is met, plaintiffs' proposed class must then qualify under one of the Rule 23(b) criteria. In the present litigation, where certification is sought under Rule 23(b)(3),

6

the court must determine that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3), Fed. R. Civ. P. 23.

Numerosity poses a preliminary barrier to certification here.  Although numerosity can be presumed for a class of forty or more, see Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), proposed classes between twenty-one and forty fall within a gray area, see MacNamara v. City of New York, 275 F.R.D. 125, 137 (S.D.N.Y. 2011).  On the record before the court, plaintiffs' proposed Rule 23 class appears to include between thirty-one and thirty-five members.  Number alone is not decisive, however, because the ultimate question is the impracticability of joinder.  See Robidoux v. Celani, 987 F.2d 931, 935-36 (2d Cir. 1993).  To determine whether joinder is impracticable, courts look to a variety of additional factors, including "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members."  Id. at 936.  Courts analyzing the Robidoux factors have denied certification in the absence of an affirmative showing by the party moving for class certification that joinder is impracticable.  See, e.g., Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (denying certification of thirty-five-member class).  Plaintiffs have made no such showing.

Because the proposed Rule 23 class is in the gray area, the court looks to the Robidoux factors to determine whether joinder is impracticable.[7] No other lawsuits have been brought to the court's attention. Putative class members are not dispersed geographically, nor do they appear to lack the resources or ability to pursue individual actions. By reclassifying all mortgage underwriters as non-exempt employees, PUB has also foreclosed the need for injunctive relief. Certainly, application of the class mechanism to the present litigation would allow other potential plaintiffs a larger recovery of unpaid overtime, since "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 554 (1974); see also In re WorldCom Sec. Litig., 496 F.3d 245, 247 (2d Cir. 2007). The size of the recovery, however, does not by itself satisfy numerosity. Plaintiffs are unable to point to a single Robidoux or other relevant factor that would make joinder inappropriate or unworkable for resolving other plaintiffs' related state-law claims.[8]

Plaintiffs' proposed Rule 23 class fails, therefore, to clear the numerosity threshold. While discovery has been limited, the court's determination does not hinge solely on the precise number of potential plaintiffs. Courts have declined to certify

---

[7] As previously noted, plaintiffs have expressed concerns about the discrepancy between PUB's present claim that there are thirty-one putative class members and PUB's prior response to Interrogatory No. 2, which identified thirty-five exempt employees. There is nothing before the court to suggest, however, that the proposed class is not in the gray area, where courts consider additional factors.

[8] In their reply brief, plaintiffs assert that the absence of other litigation against PUB supports rather than undermines their numerosity argument. See Pls.' Reply to Def.'s Mem. in Opp'n to Pls.' Mot. (Doc. No. 47) at 4 (citing Lessard v. Rent-A-Ctr. E., Inc., 250 F.R.D. 103, 106-07 (D. Conn. 2008)). The case cited for that proposition, however, does not pertain to numerosity. Because the proposed class and subclass in Lessard included 61,000 and 21,000 members, respectively, numerosity was not an issue. 250 F.R.D. at 106. Judge Bryant's observation on the absence of other litigation was made in the context of Rule 23(b)(3), where other actions and proposed class members' interests in maintaining separate lawsuits weigh against superiority. Id. at 107-08.

classes of forty and larger—where numerosity can be presumed—absent factors arguing against the use of joinder. See, e.g., Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 269 F.R.D. 252, 258 (S.D.N.Y. 2010) (denying certification of class on the "cusp"); Deen v. New Sch. Univ., No. 05-7174, 2008 WL 331366 (S.D.N.Y. Feb. 4, 2008) (denying certification of 110-member class).[9] Because numerosity is not met in the present case, the court declines to reach the other Rule 23(a) requirements or the Rule 23(b)(3) issues of predominance and superiority. A fuller record may reveal factors overlooked in the court's analysis. The court, therefore, denies plaintiffs' motion for Rule 23 certification without prejudice.

## IV.   CONCLUSION

For the reasons above, plaintiffs' Motion (Doc. No. 39) is **granted in part and denied in part**. The court **grants** the Motion for Conditional Certification of the FLSA collective action class and **denies** without prejudice plaintiff's Motion for Certification of the Rule 23 class. Plaintiffs' proposed FLSA class contemplates all underwriters who worked out of PUB's Bridgeport office since May 3, 2009. To facilitate the issuance of notice, the court orders PUB to disclose potential opt-in plaintiffs' names, addresses, employment locations, and dates of employment. The parties are referred to the court's instructions at the hearing on the Motion regarding notice, and are ordered to submit a

---

[9] Plaintiffs cite two pre-Robidoux cases in which district courts in the Second Circuit certified classes of less than forty members. See Pl.'s Mem. of Law in Supp. of Pls.' Mot. (Doc. No. 40) at 14 (citing U.S. ex rel. Walker v. Mancusi, 338 F. Supp. 311, 316 (W.D.N.Y. 1971); Cruden v. Bank of New York, No. 85 CIV. 4170 (JFK), 1988 WL 9514 (S.D.N.Y. Feb. 1, 1988)). Mancusi, however, declared thirty-eight to be sufficiently numerous without supporting reasons. In that case, the entire certification inquiry occupies one short paragraph that would scarcely satisfy the "rigorous analysis" standard required today under Dukes. 131 S. Ct. at 2551. In Cruden, the court explicitly found that, although the proposed class contained thirty-five to thirty-seven members, joinder was impracticable because "members of the class reside in anywhere from 13 to 29 states." 1988 WL 9514 at *3.

joint form of notice within seven days of the date of this ruling or, if they are unable to agree on a single form, to submit competing notices within the same time period.

Further, the parties are ordered to confer and submit a proposed amended scheduling order within five court days of this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 17th day of June, 2013.

　　　　　　　　　　　　　　　　　　　　／s／ Janet C. Hall　　　　
　　　　　　　　　　　　　　　　　Janet C. Hall
　　　　　　　　　　　　　　　　　United States District Judge